| .MARION F. EDWARDS, Judge.
In this case, defendant, Kenner Plaza Shopping Center, L.L.C., appeals the trial court’s finding that it had breached its commercial lease contract with plaintiff, Premier Restaurants, Inc. Kenner Plaza and Premier both further appeal the trial court’s award of damages. For the following reasons, we reverse the trial court’s determination of liability and accordingly vacate the award of damages to the plaintiff.
FACTS AND PROCEDURAL HISTORY
This case was originally filed as one of two consolidated suits brought by Premier Restaurants, Inc., (“Premier”), and Creative Foods, Inc., against Kenner Plaza Shopping Center, L.L.C., (“Kenner Plaza”), to enforce separate commercial leases for parcels of property upon which Premier and Creative Foods would construct two restaurants, a “Copeland’s Of New Orleans” and a ‘Wrap and Roll Café.”[1]
|aKenner Plaza Shopping Center, L.L.C., is the owner of the property and improvements located on Williams Boulevard in Kenner between West Esplanade Avenue and 33rd Street, bearing the municipal address 3300-3400 Williams Boulevard. On January 22, 1998, Premier filed a petition for declaratory judgment, specific performance and damages, claiming that on July 15, 1997 it entered into a lease agreement with Kenner Plaza in conjunction with the development of a Copeland’s of New Orleans restaurant.
Premier alleged that, shortly after the lease was executed, its project was faced with objection from other Kenner Plaza tenants and that Kenner Plaza then asked Premier to “swap” its location with that reserved for a Wrap & Roll Café being developed by Creative Foods, Inc. Premier stated that as an accommodation to Ken-ner Plaza it agreed to exchange locations as requested.
Kenner Plaza responded with an exception of no cause of action, which was denied. Following Kenner Plaza’s answer, Premier filed a Motion for Partial Summary Judgment on liability, asserting that Kenner Plaza breached the Lease by refusing to allow Premier to begin construction. On January 13, 1999, the trial court granted Premier’s Motion for Summary Judgment on the issue of liability, finding that the Lease contained a covenant by Kenner Plaza that the Shopping Center had sufficient parking, and contained no provisions that would require approval of any other tenant of the shopping center before construction or use of the leased premises could begin. Kenner Plaza appealed.[2]
DWhile the prior appeal of the liability judgment was pending, plaintiff had filed a Motion for Partial Summary Judgment on specific performance. Plaintiff argued that because the court had already found judgment in its favor on liability under the lease, it was entitled to specific performance as a matter of law. On August 12, 1999, the trial court granted plaintiffs Motion for Partial Summary Judgment on specific performance, “[f]or the reasons assigned in plaintiffs memorandum and oral argument, and also due to defendant’s failure in demonstrating the existence of a genuine issue of material fact as to why plaintiff is not entitled to specific perfor- *449 manee, the preferred remedy for breach of contract under Louisiana law.”
Motions for new trial on both partial summary judgments were heard on August 27, 1999 and denied by judgment of September 15,1999, culminating in Kenner Plaza’s second appeal.[3] In that appeal, we reversed both summary judgments, finding that the attachments provided in support of Premier’s Motion for Summary Judgment on the issue of liability were insufficient to establish not only that there was a valid lease but also that the lease was breached. Because the second summary judgment was predicated upon the trial court’s finding of liability, we accordingly reversed the trial court’s Summary Judgment on the issue of specific performance as well.
While the above referenced appeals were pending in this court, a trial on damages was held in the district court resulting in a 1.25 million dollar damage award, with interest and attorney’s fees, in favor of Premier | ¡^Restaurants, Inc. That judgment was rendered on March 9, 2000, and a third appeal was taken by Kenner Plaza.[4] Then, on August 29, 2000, this court set aside the two prior summary judgments regarding liability and remanded the case to the district court for a trial on that issue. In light of our holding in the third appeal, that summary judgment on the issue of liability was erroneous, we found that there was no basis for a damage award to Premier. Accordingly, we vacated the award of damages as premature and remanded the case for further proceedings.
On December 11, 2000, Kenner Plaza filed an Amended Answer, alleging, in part, that it never informed Premier that it could not build a restaurant, that it never breached the lease, and that Premier breached the lease by failing to begin construction and failing to provide plans and specifications as well as the necessary permits.
The trial forming the basis of the present appeal was held on June 20, 2001. The trial court issued its Judgment and Reasons for Judgment on September 10, 2001, awarding Premier $702,585.00, in addition to $17,682.92 per month for lost profits and 12 percent contractual interest per annum for each additional month of delay thereafter. The trial court further awarded $183,493.75 for attorney’s fees and $8,693.44 for costs.
On November 6, 2001, Kenner Plaza timely filed a Motion for Appeal, which was granted on November 13, 2001. On November 13, 2001, Premier also timely filed a Motion for Appeal from the damages portion of the judgment, which was granted on November 15, 2001.
RLAW AND ANALYSIS
In its second, third, and fourth assignments of error, Kenner Plaza argues, in essence, that the district court erred in finding that it had breached the lease at issue. Specifically, Kenner Plaza asserts that the trial court erred in finding that it was required under the lease to provide additional approval for the proposed site of Premiere’s “Copeland’s” restaurant prior to construction.
As we noted in DiBenedetto v. Automotive Cas. Ins. Co.[5], our appellate re *450 view is what is commonly referred to as an Arceneaux[6] review in that we must determine from the record whether there was a reasonable factual basis for the trial court’s factual findings and further determine whether the trial court erred as a matter of law. Additionally, as the Louisiana Supreme Court noted in Stobart v. State, DOTD,[7] “a Court of Appeal may not overturn the Judgment of a Trial Court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong.” In regard to appeals involving contractual disputes however, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply.[8]
|7La. C.C. art. 2670, defines the essential elements of a lease contract as the thing, the price, and the consent. In our independent review of the lease in this case, we note that while the requirements of price and consent under Art. 2670 are clearly delineated, the “thing” of the lease is less clearly defined.
Subsection One of the lease describes the leased premises as being situated at:
Kenner Plaza Shopping Center
3300-3400 Williams Boulevard
Kenner, Louisiana 700062[sic],
Section One further states:
Lessor and Lessee mutually agree that the drawings or description attached hereto as Exhibit “A”[9] constitutes the Leased Premises to the best of their knowledge, but that the same do not constitute a legal description of the Leased Premises. Lessor and Lessee further agree that upon completion of the survey and, if applicable, plan of subdivision pursuant to subsection C of Section 9 hereof, this Lease shall be amended by attaching the description of the Leased Premises from said survey as Exhibit “A-I which Exhibit “A-I” shall be for the same property described in Exhibit A and shall be deemed to be the legal description of the Leased Premises for the purpose of this Lease. [Emphasis provided].
Subsection C of Section 9 states, in relevant part:
Following the effective date of this Lease, Lessee shall order a current certified survey of the Leased Premises, bearing a legal description of the Leased Premises, made and prepared by a reputable and competent licensed surveyor ... In addition to the foregoing, if deemed necessary by Lessee, Lessee shall order a plan of subdivision for the Leased Premises made and prepared by a reputable and competent licensed surveyor in the jurisdiction in which the Leased Premises are located showing the Real Property and any and all easements and restricted property set forth in this Lease. [Emphasis provided]
*451 |sNo further written identification or physical description is provided in the lease document regarding the dimensions of the property leased by Premier. We find that the description of the leased premises, as to the property leased, with a physical description to be provided at a later date, is ambiguous as written. We therefore turn to the parol evidence established at trial to confirm the original intent of the parties as to the actual leased property.[10]
In this case, Denise Gaines, an employee of Kailus Management, the owner Kenner Plaza, who also negotiated the lease with Premier, testified that the parties intended for the leased property to be located “Up against the Taco Bell in front of Burlington”, which is at the south western edge of Kenner Plaza’s property. This testimony is consistent with the indication made on the site map attached to the lease. The record reflects, however, that Premier never had the leased premises surveyed in order to generate a legal description, as required under Subsection C of Section 9, and therefore, the precise location of the leased premises was never ascertained.
The record next shows that after signing the lease, the parties entered into negotiations to “swap” the original location referred to in the lease for another location on Kenner Plaza’s property for which A1 Copeland, Jr.’s other business, Creative Food Concepts, had also entered into a lease for the purpose of building a restaurant. At trial, Gaines testified that A1 Copeland, Jr. had suggested swapping the location of the Copeland’s restaurant for the site of another lease on the Kenner Plaza | sproperty, upon which a “Wrap and Rolls” restaurant would be built. Gaines also testified, however, that Kenner Plaza was reluctant to allow Premier to build Copeland’s on the proposed “swap” site because of negotiations that were ongoing with a prospective tenant, Albertson’s. Specifically, Gaines agreed that Kenner Plaza did not want the Copeland’s, on the proposed “swap” site, to “block” the storefront of the perspective Albertson’s.[11]
At trial, A1 Copeland, Jr., testified that Gaines had called him and asked if he would consider switching the site of the Copeland’s restaurant from the site designated in the lease. Copeland further testified that he had no objection to switching the sites, as proposed. Copeland then testified that he received an indication that the “back tenants” in Kenner Plaza took issue with the proposed “swap” site regarding “ingress and egress” and “view corridor.” Copeland also stated. that at one point in time, Kenner Plaza suggested buying out a Church’s franchise located on the property, and building Copeland’s Restaurant there instead. Finally, Copeland testified that he feared that Kenner Plaza would never allow him to build on their property, and that he would not “build a $2 million dollar project on a pad without approval of where it should — exactly it should be from the landlord.”
We next review the terms of the lease that relate to Premier’s construction of a restaurant on the leased premises. Section 10 of the lease provides:
During the original term or any renewal term of this Lease, Lessee may make alterations, additions and improvements |into the Leased Premises. Lessee shall have the right to erect and install such other or additional improvements, and equipment on the Leased Premises as Lessee may, with *452 Lessor’s written permission which shall not be unreasonably withheld, deem desirable for conduction its business thereon or for such other business as Lessee may deem advisable. [Emphasis provided].
In its Reasons for Judgment, the trial court indicated that it relied on Section 10 to make it ruling:
The evidence presented at trial indicates that subsequent to the execution of •the lease, there was some discussion amongst the parties as to a “swap” in locations on the Kenner Plaza property of the proposed Copeland’s Restaurant and the Wrap and Roll restaurant then being developed pursuant to a separate lease also dated July 15, 1997. As a result of the proposed “swap” in locations and the alteration the proposed swap caused to the lease, Premier Restaurants forwarded two demand letters to Kenner Plaza requesting authority to begin construction. This request was properly made pursuant to Article 10 of the lease ... At the trial of the matter, both Al Coperland, Jr., Premier Restaurant’s principal and Denise Gaines, Kenner Plaza’s representative testified that, despite the demand letters requesting the authority to begin construction, it was never communicated to Mr. Copeland that he could begin construction on his restaurant, either on the proposed “swap” site or the original site.
In regard to the trial court’s finding that discussions over possible “swap” locations and proposed alterations to the lease somehow changed the lease site location, we first take note of section nine of the lease, which provides:
This Lease contains the entire agreement between the parties and any agreement hereafter made shall be ineffective to change, modify or discharge it in whole or in part unless such agreement is in writing and signed by the party against whom enforcement of the change, modification or discharge is sought. [Emphasis added].
By the very terms of the lease, any proposed “swap’ location that was not in writing and signed by Kenner Plaza would not be effective against it. Thus, in spite of any discussions that took place between the parties, we find that the location of the restaurant site, as defined by the lease, did not | X1 change, and therefore no additional approval for construction by Kenner Plaza was necessary on those grounds.
Finally, we review the trial court’s determination that, under Article 10 of the lease, Kenner Plaza was required to provide authority to begin construction on the restaurant, beyond that which it had already provided. Our reading of the first sentence of Article 10 leads us to the conclusion that the lease clearly allowed Premier to make alterations, additions and improvements to the Leased Premises. The second sentence, however, pertaining to the erection and installation of other or additional improvements and equipment after a written request, appears to be the trial court’s basis for an award of damages.
La. C.C. Art.2056 provides that, “In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.” After an independent review and examination of the lease, we find the second sentence of Article 10, as it is written, requires written permission from Kenner Plaza for construction only as it pertains to additional improvements and equipment, not initial construction.
Based on the foregoing, we find that, although it certainly would have made perfect sense for the lease to require Kenner Plaza to give written permission to begin initial construction on the Copeland’s Res *453 taurant, as the lease is presently written, no such written permission by Kenner Plaza was required. Therefore, we conclude that Kenner Plaza did not breach the terms of the lease and reverse the trial court’s finding on this issue. Because the trial court’s finding of Kenner Plaza’s liability must |12be reversed, we further vacate the trial court’s award of damages to Premier Restaurants, Inc.
For the foregoing reasons, the judgment on appeal is reversed and vacated.
REVERSED AND VACATED.

. Creative Food Concepts, Inc., v. Kenner Plaza Shopping Center, L.L.C., bearing Civil Action No. 519-542, pertaining to the Wrap and Roll Café, was voluntarily dismissed.

. Upon the motion of Kenner Plaza, this Court dismissed the first appeal without prejudice, as the liability judgment upon which it was based was not a final judgment.

. Premier Restaurants, Inc. v. Kenner Plaza Shopping Center, L.L.C., 99-1310 (La.App. 5 Cir. 8/29/00), 767 So.2d 927.

. Premier Restaurants, Inc. v. Kenner Plaza Shopping Center, L.L.C., 00-1700 (La.App. 5 Cir. 1/30/01), 778 So.2d 1180.

. 94-35 (La.App. 5 Cir. 5/31/94), 638 So.2d 385, 387; writ denied, 94-1776 (La. 10/28/94), *450 644 So.2d 650.

. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

. 617 So.2d 880 (La.1993).

. Conoco, Inc. v. Tenneco, Inc., Tennessee Gas Pipeline Company, 524 So.2d 1305, 1312 (La. App. 3rd Cir.); writ denied, 525 So.2d 1048 (La.1988).

.Exhibit "A” to the lease, entered into evidence by Premiere at trial, is comprised of a photocopied survey map upon which a single corner, of what appears to be identified as the corner of a parking lot, is marked in highlighter with an inverse "L”, presumably showing the boundary of the leased premises.

. Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087, 1089 (La.1981).

. Albertson's never became a tenant of Ken-ner Plaza.